
Marian F. Harrison
US Bankruptcy Judge

Dated: 01/06/10

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| COMMISSARY OPERATIONS, INC., | ) | CASE NO. 308-06279 |
| | ) | CHAPTER 11 |
| Debtor. | ) | |
| | ) | JUDGE MARIAN F. HARRISON |
| | ) | |
| COMMISSARY OPERATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DOT FOODS, INC., | ) | Adv. Pro. No.: 309-00280A |
| SUGAR FOODS CORPORATION, | ) | Adv. Pro. No.: 309-00282A |
| ARCOBASSO FOODS, INC., | ) | Adv. Pro. No.: 309-00287A |
| NEW CITY PACKING COMPANY, | ) | Adv. Pro. No.: 309-00290A |
| INC., | ) | |
| SCA TISSUE NORTH AMERICA, LLC, | ) | Adv. Pro. No.: 309-00295A |
| H.J. HEINZ COMPANY, L.P., | ) | Adv. Pro. No.: 309-00297A |
| GEORGIA PACIFIC CONSUMER | ) | Adv. Pro. No.: 309-00300A |
| PRODUCTS, LP, ET AL, | ) | |
| ECOLAB, INC., | ) | Adv. Pro. No.: 309-00301A |
| CONAGRA FOODS, INC., ET AL, | ) | Adv. Pro. No.: 309-00303A |
| NATIONAL STEAK PROCESSORS, | ) | |
| INC., d/b/a NATIONAL STEAK AND | ) | |
| POULTRY, | ) | Adv. Pro. No.: 309-00306A |
| ALLEN'S, INC., | ) | Adv. Pro. No.: 309-00309A |
| ROCKY MOUNTAIN NATURAL | ) | |
| MEATS, INC., | ) | Adv. Pro. No.: 309-00315A |
| SUPERIOR DAIRY, INC., and | ) | Adv. Pro. No.: 309-00327A |
| RYDER TRUCK RENTAL, INC., | ) | Adv. Pro. No.: 309-00332A |
| | ) | |
| Defendants. | ) | |

_____
## MEMORANDUM OPINION
_____

This matter came before the Court upon the debtor's motions for declaratory judgment regarding the use of 11 U.S.C. § 503(b)(9) administrative invoices in the 11 U.S.C. § 547(c)(4) subsequent new value defense to a preference claim and the various defendants' objections to the debtor's motions and motions for summary judgment on the same issue.[1] As stated in open court and for the following reasons, the Court denies the debtor's motions for declaratory judgment, sustains the defendants' objections to the debtor's motions, and grants the defendants' motions for partial summary judgment.

### I. PROCEDURAL BACKGROUND

On July 22, 2008, the debtor filed its voluntary Chapter 11 petition. As of the petition date, the debtor's primary business was the wholesale distribution of food and related items to chain restaurants and restaurant franchisees. The debtor originally intended to reorganize its business, however, due to various post-petition occurrences, the debtor determined in the exercise of its business judgment to wind down its business and liquidate its assets. Over 200 creditors asserted approximately 215 claims for allowance of administrative expenses arising under 11 U.S.C. § 503(b)(9). The debtor then initiated adversary proceedings against

---

[1]At the hearing, the debtor requested permission to present testimony regarding the defendants' reclamation claims. The Court orally denied the request, recognizing that the new value defense was the only issue addressed in the pleadings and set for hearing.

several creditors, seeking recovery of alleged preferential transfers made by the debtor within the 90 days prior to the petition date. During a hearing held on September 17, 2009, this Court invited the parties to assert their positions on whether a creditor may reduce its liability by new value provided to a debtor within the 20 days prior to the bankruptcy filing if the creditor also files a § 503(b)(9) administrative claim seeking payment for that new value. Pleadings on this issue were filed in the above-styled adversaries.

## II. ARGUMENTS

The issue in dispute is whether the goods and invoices making up the pending 11 U.S.C. § 503(b)(9) claims may be included in the 11 U.S.C. § 547(c)(4) defense to a preference claim, commonly referred to as the "subsequent new value defense." The debtor argues that they should not be included in the subsequent new value defense, asserting that creditors would receive double value for their § 503(b)(9) invoices: first by receiving administrative expense priority over unsecured creditors, and second by reducing their preference liability by the amount of their § 503(b)(9) invoices, assuming those invoices are for goods provided subsequent to avoidable preferential transfers.

The creditors submit that goods delivered to a pre-petition debtor within the 20 days prior to the petition date benefit the pre-petition debtor and the estate upon a bankruptcy filing. Therefore, the creditors argue that they cannot be excluded from a subsequent new value defense analysis under 11 U.S.C. § 547(c)(4) because: (1) a creditor's ability to file

a claim for administrative payment for the value of goods delivered in the 20 days prior to the petition date arises only after the debtor files the bankruptcy petition, and unlike reclamation, affords a creditor only the right to request administrative status, but not to seek return of its deliveries, or otherwise encumber the delivered goods prior to or after the bankruptcy filing; (2) any payment that a creditor may receive on a properly filed § 503(b)(9) claim necessarily occurs after the bankruptcy filing, and because post-petition payments cannot be used to deplete pre-petition new value, any payment a creditor receives, or may hope to receive, on its § 503(b)(9) claim cannot deplete that creditor's new value in a subsequent new value defense to a preference action; (3) applying §§ 503(b)(9) and 547(c)(4) so as not to limit a

creditor's new value by the amount of its § 503(b)(9) claim furthers the policy of both provisions to encourage creditors to continue to do business with a troubled debtor; (4) forcing a creditor to choose between its right to administrative expense status under § 503(b)(9) and the statutory defense in § 547(c)(4) runs counter to the long-standing interpretation and treatment of the new value defense; and (5) the plain language of §§ 503(b)(9) and 547(c)(4) and prior case law compel a holding that the new value defense is not reduced by the allowance of an administrative expense claim.

## III. DISCUSSION

Whether deliveries entitled to a § 503(b)(9) claim status are disqualified from constituting new value for purposes of 11 U.S.C. §§ 547(a)(2) and 547(c)(4) is a question of first impression. In order to decide this issue, the Court must consider and interpret 11 U.S.C. §§ 503(b)(9), 547(a)(2), and 547(c)(4).

"New value" is defined in 11 U.S.C. § 547(a)(2) as "money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation." Pursuant to 11 U.S.C. § 547(c)(4), a creditor is protected from avoidance of an allegedly preferential transfer to the extent that after the transfer, the creditor "gave new value to or for the benefit of the debtor." New value helps a creditor reduce its preference liability if that new value is not secured by an otherwise unavoidable security interest. 11 U.S.C. § 547(c)(4)(A). The reasoning behind this limitation is that a debtor "is not enhanced if the new value given after the preferential transfer is subject to liens and would not balance the loss caused by the preferential transfer." *Phoenix Rest. Group, Inc. v. Proficient Food Co. (In re Phoenix Rest. Group, Inc.)*, 373 B.R. 541, 547 (M.D. Tenn. 2007).

Section 503(b)(9) provides that an allowed administrative expense includes "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." A creditor's right to assert an administrative expense claim under 11 U.S.C. § 503(b)(9) is not linked to or conditioned upon the creditor's separate, potential right to assert a reclamation claim against the debtor pursuant to 11 U.S.C. § 546(c). *See ASM Capital, LP v. Ames Dep't Stores, Inc. (In re Ames Dep't Stores, Inc.),* 582 F.3d 422, 424 n.2 (2d Cir. 2009) (Congress "amended section 546(c)(2) to provide that '[i]f a seller of goods fails to provide notice in the manner described in paragraph (1), the seller still may assert the rights contained in section 503(b)(9)'") (citation omitted). While 11 U.S.C. § 503(b)(9) affords a creditor the opportunity to receive payment for goods delivered within the 20-day period before the bankruptcy filing, it does not allow a creditor to claim a lien or otherwise repossess those delivered goods. In other words, it is not a reclamation claim.

As stated earlier, there are no reported decisions specifically addressing whether payment of a § 503(b)(9) claim precludes the claimant from asserting a new value defense based upon the related 20-day goods delivered to the debtor. However, in *Phoenix Rest. Group, Inc. v. Proficient Food Co. (In re Phoenix Rest. Group, Inc.),* the District Court agreed with the bankruptcy court and determined that the amount of a preference defendant's reclamation claim can be used to deplete that defendant's new value because the defendant "essentially kept strings on those goods and thus, the goods subject to reclamation did not

enhance [the debtor] . . . ." 373 B.R. 541, 547. The District Court adopted the bankruptcy court's reasoning that:

> [G]oods shipped on the eve of bankruptcy that are subject to reclamation are not the same "money or money's worth, as goods shipped free of the seller's strings." *See* 11 U.S.C. § 547(a)(2). In the same sense that goods subject to a PACA trust do not enhance the debtor because the value of those goods is held in trust for the growers and shippers, goods subject to reclamation do not enhance the debtor to the extent the value of those goods can be reclaimed.

*Id.* at 548 (citation omitted).

In other words, in ***In re Phoenix Rest. Group, Inc.,*** the District Court valued the reclamation right at an amount equal to the amount of the goods. Thus, there was no remaining new value available as a preference defense because the reclamation right was fully recognized and paid by the debtor. *Id.* at 549. The same rationale does not apply to § 503(b)(9) claims.

First, the ability to assert a § 503(b)(9) claim, unlike a reclamation claim, only arises after the filing of the bankruptcy petition. The right to a § 503(b)(9) administrative claim for those goods shipped within the preceding 20 days is solely cognizable in bankruptcy. In fact, at the time the goods are shipped to the debtor, the claimant does not even know it is shipping within the 11 U.S.C. § 503(b)(9) period. Moreover, even once a § 503(b)(9) claim is asserted, the holder is still not entitled to a lien on the goods subject to the claim or demand the return of such goods. Instead, the claimant is only entitled to request priority

Case 3:09-ap-00300   Doc 18   Filed 01/07/10   Entered 01/07/10 08:19:39   Desc Main
Document      Page 7 of 11

payment for goods that are in the debtor's possession pre-petition and then used by the debtor-in-possession post-petition to continue operations.

The debtor-in-possession is not required to hold in trust the value of the goods for the benefit of the potential § 503(b)(9) claimant. Instead, payment is dependent upon whether the claimant's § 503(b)(9) claim is approved by the Court and whether the debtor-in-possession has the ability to pay the § 503(b)(9) claim either before or after a plan is confirmed.

With reclamation claims, the debtor is obligated to segregate and return reclamation goods, depriving it of the ability to re-sell the goods at a profit or to incorporate the goods into a manufactured product for sale. Conversely, a debtor can freely use goods subject to a § 503(b)(9) claim, whether before or after the petition date. Thus, goods shipped to and received by a debtor in the 20 days prior to bankruptcy are exactly the same as "money or money's worth as goods shipped free of the seller's strings." *Id.* at 548.

Section 503(b)(9) claims are analogous to critical vendor claims. In ***Phoenix Rest. Group, Inc. v. Ajilon Prof'l Staffing LLC (In re Phoenix Rest. Group, Inc.)***, 317 B.R. 491 (Bankr. M.D. Tenn. 2004), at issue was a preference defendant's new value defense where the defendant had been a critical vendor and received full payment post-petition for pre-petition new value invoices. *Id.* at 496. Judge Lundin determined that the "plain language

of § 547 closes the preference window at the petition, limiting the § 547(c)(4) defense to new value supplied and payments made *before* the debtor crosses into bankruptcy." *Id.* (emphasis added). *See also Kaye v. Accord Mfg., Inc.,* No. 05-0732, 2007 WL 5595447 (Bankr. M.D. Tenn. June 6, 2007) (post-petition paid new value is not excluded from new value defense). Obviously, critical vendors, who have been paid in full and do not receive statutory status, should not occupy a more favorable position as preference defendants than § 509(b)(9) claimants, whose administrative claims are expressly contemplated for distribution in the Bankruptcy Code and while allowed, have not been paid. Because goods shipped to and received by a debtor in the 20 days prior to bankruptcy satisfy the definition of "new value" in 11 U.S.C. § 547(a)(2), a creditor need not reduce its new value, in a subsequent new value defense, by the amount of any deliveries included in its § 503(b)(9) claim.

The possibility that a § 503(b)(9) claimant might receive payment for the deliveries it made to a debtor within the 20 days prior to the petition date does not remove those deliveries from the definition of "new value" in 11 U.S.C. § 547(a)(2). As discussed in **Phoenix Rest. Group, Inc. v. Proficient Food Co. (In re Phoenix Rest. Group, Inc.),** the "preference window of § 547 closed on the date of the filing of the bankruptcy petition and post-petition payments could not be used to deplete pre-petition 'new value.'" 373 B.R. 541**,** 547. Thus, the possibility that a debtor may pay a creditor's § 503(b)(9) claim post-petition does not negate the value represented by the claim that the creditor provided to the debtor. The deliveries benefit the estate, for purposes of 11 U.S.C. §§ 547(a)(2) and 547(c)(4),

regardless of whether the § 503(b)(9) claimants are paid at a later date for those deliveries. Even if the creditor receives a limited post-petition payment on its § 503(b)(9) claim to cover the "value" of the goods, the debtor-in-possession has realized the mark-up profit on the re-sale of the goods (or use of the goods incorporated into a finished product for sale, for a manufacturing or distributor debtor) and has the ability to fill an order to its customers' satisfaction. Meeting and fulfilling the expectation of customers achieves the most important goal of a business entity – to maximize its goodwill.

Finally, the Congressional policy behind 11 U.S.C. § 503(b)(9) (giving trade creditors a post-petition priority for the value of goods delivered to the debtor within 20 days of the petition) and 11 U.S.C. § 547(c)(4) (encouraging creditors to continue to do business with and extend credit to debtors in trouble and heading for bankruptcy) supports this conclusion. *See In re Arts Dairy*, *LLC*, 414 B.R. 219, 220 (Bankr. N.D. Ohio 2009) (describing policy goals of § 503(b)(9)); **In re Phoenix Rest. Group, Inc.,** 373 B.R. 541, 547 (describing policy goals of § 547(c)(4)).

To force a creditor to choose between asserting a § 503(b)(9) claim and preserving its right to assert a subsequent new value defense that includes deliveries made to the debtor within the 20 days prior to the bankruptcy filing would work a disservice on Congress' inherent policy goals when enacting 11 U.S.C. §§ 503(b)(9) and 547(c)(4). Requiring creditors to make such a choice would chill their willingness to do business with troubled

10 - U.S. Bankruptcy Court, M.D. Tenn.

entities. In addition, requiring creditors to make this choice in essence deprives sellers of goods of the benefits Congress conferred upon them when it enacted 11 U.S.C. § 503(b)(9).

This policy is supported by the fact that when 11 U.S.C. § 503(b)(9) was added, Congress did not amend 11 U.S.C. § 547(c)(4) to include a new subsection reducing new value by the amount of any § 503(b)(9) claim. There is nothing in the plain language of 11 U.S.C. § 503(b)(9) or 11 U.S.C. § 547(c)(4) that indicates any Congressional intent to offset the intended benefits that 11 U.S.C. § 503(b)(9) confers upon sellers through a reduction of available new value in defending a preference action.

### IV. **CONCLUSION**

For the reasons stated above, the Court denies the debtor's motions for declaratory judgment, sustains the defendants' objections to the debtor's motions, and grants the defendants' motions for partial summary judgment. Specifically, the Court finds that deliveries entitled to § 503(b)(9) claim status are not disqualified from constituting new value for purposes of 11 U.S.C. §§ 547(a)(2) and 547(c)(4).

An appropriate order will enter.

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page.**

11 - U.S. Bankruptcy Court, M.D. Tenn.

This Order has Been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

Case 3:09-ap-00300    Doc 18    Filed 01/07/10    Entered 01/07/10 08:19:39    Desc Main
Document      Page 11 of 11